IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPANK! MUSIC AND SOUND DESIGN, INC., ) | |
| ) | |
| Plaintiff, ) | No. 04 C 6760 |
| ) | |
| v. ) | Suzanne B. Conlon, Judge |
| ) | |
| PATRICK J. HANKE, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Spank! Music and Sound Design, Inc. ("Spank"), a music and sound design company located in Chicago, seeks injunctive relief and damages against former employees Patrick J. Hanke, Katie Jones and Arianne Braverman, and Sovereign, a competing music and sound design business. All defendants reside in California. Jones and Braverman (hereinafter "defendants") move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(4) for lack of personal jurisdiction. In the alternative, defendants move to transfer venue to the Central District of California.

## BACKGROUND

Spank is an Illinois corporation with its principal place of business in Chicago. Compl. at ¶ 4. Spank composes original music and sound design for commercials, films, and television shows. *Id.* at ¶ 9. In 1997, Spank opened a satellite office in Santa Monica, California. *Id.* at ¶ 10. In November 2001, Jones was hired as a sales representative in the California office; she became an executive producer in January 2003. *Id.* at ¶ 24. Braverman was hired as a sales representative in the California office in April 2004. *Id.* at ¶ 26. Because Jones and Braverman had access to

1

confidential and proprietary information, Spank obtained signed confidentiality agreements, governed by the laws of the State of Illinois, from both employees. *Id.* at ¶¶ 25, 27, 31-37.

Spank contends defendants sabotaged business operations by secretly organizing, planning and launching Sovereign's competing music and sound design business. *Id.* at ¶¶ 1, 39-40, 47-52. Further, Spank claims defendants willfully and intentionally: (1) solicited Spank's clients, employees and sound designer; (2) misappropriated Spank's confidential and proprietary information; and (3) left Spank with various debts. *Id.* Spank sues Jones and Braverman for breach of their confidentiality agreements, violation of the Illinois Trade Secrets Act, 765 ILCS 1065 *et seq.*, breach of fiduciary duty and conspiracy to breach fiduciary duty. Jones resigned from Spank on September 3, 2004. *Id.* at ¶ 45. Spank terminated Braverman on September 28, 2004. *Id.* at ¶ 46.

## DISCUSSION

### I. Personal Jurisdiction

#### A. Illinois Contacts

In deciding a Rule 12(b)(2) motion to dismiss, Spank bears the burden of demonstrating the existence of personal jurisdiction. *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1276 (7th Cir. 1997); *ABN Amro Sage Corp. v. Cohen*, No. 03 C 3556, 2003 U.S. Dist. LEXIS 15390, *1 (N.D. Ill. Sept. 3, 2003). The court accepts all well-pleaded jurisdictional allegations in the complaint as true unless controverted by affidavit. *ABN*, 2003 U.S. Dist. LEXIS 15390 at *1. Any conflict presented by affidavit must be resolved in Spank's favor. *Id.* Defendants' unrefuted facts are accepted as true. *Id.*

Braverman contends personal jurisdiction over her is inappropriate because she: (1) does not live in Illinois and has never lived in Illinois; (2) has only visited Illinois twice for a total of 6 days;

(3) worked for Spank for 6 months and was fired without notice; and (4) was not part of Spank's management. Mot. at Ex. B. Jones contends personal jurisdiction over her is inappropriate because she: (1) is a resident of Los Angeles; (2) has never been an officer, director or manager of any entity doing business in Illinois; and (3) only visited Illinois on a few occasions and solely at Spank's request. Mot at Ex. C. Defendants emphasize that the alleged events giving rise to the claims against them did not occur in Illinois.

In response, Spank asserts Braverman was interviewed in Chicago and was extended an offer from Spank's Chicago office. Resp. at 3; Ex. C. Further, Braverman traveled to Chicago at Spank's expense to undergo five days of training and received paychecks and benefits issued from Spank's Illinois headquarters. *Id.* Spank asserts Jones traveled to Chicago at Spank's expense to undergo four days of training at Spank's headquarters. *Id.* In addition, Jones traveled to Illinois on Spank business on at least three occasions, and her paychecks and benefits were issued from Spank's Illinois headquarters. *Id.* Spank indicates both Jones and Braverman reported to superiors in the Chicago office on a daily or weekly basis, communicated via phone, fax and e-mail with Chicago personnel, and regularly submitted expense reports, sales materials, purchase orders, job estimates, vendor invoices, client contracts, session sheets and other materials to Spank's Chicago office. *Id.* Spank emphasizes neither defendant claims she did not know she was employed by an Illinois company or that she could not readily anticipate that any complaints regarding her employment would originate in Illinois.

In a diversity case, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant only if an Illinois court would have jurisdiction over the defendant. *See RAR, Inc.*, 107 F.3d at 1275. An Illinois court has personnel jurisdiction only where permitted by

state statutory law, and state and federal constitutional law. *Id.* at 1276. Illinois' long-arm statute extends personal jurisdiction to the limit allowed under the Illinois and federal constitutions. *Id.* Courts typically consider the reach of Illinois due process by looking to federal constitutional limits on jurisdiction. *Id.* at 1276-77; *see also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). A defendant must have "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (citation omitted). Jurisdiction may be general or specific. *RAR, Inc.*, 107 F.3d at 1277. Spank contends specific jurisdiction exists.

To establish specific jurisdiction, Spank must demonstrate defendants "purposefully established minimum contacts" in Illinois and should "reasonably anticipate being haled into court" in Illinois. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985); *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980). These contacts may not be fortuitous or attenuated. *See Jamison v. UGN, Inc.*, No. 03 C 6422, 2003 U.S. Dist. LEXIS 20688, *4 (N.D. Ill. Nov. 13, 2003). Instead, this requirement is satisfied if defendants purposefully directed their activities at the forum state and the litigation arises from injuries caused by those activities. *Burger King Corp.*, 471 U.S. at 474.

Spank asserts defendants' extensive contact with Chicago headquarters provides sufficient minimum contacts to exert jurisdiction over them. Further, Spank contends jurisdiction is appropriate under the "effects doctrine." "Under the 'effects doctrine,' personal jurisdiction over a nonresident defendant is proper when defendant's intentional tortious actions aimed at the forum state cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to

be suffered." *Riddell, Inc. v. Impact Protective Equip., L.L.C.*, No. 03 C 3309, 2003 WL 21799935, *3 (N.D. Ill. July 25, 2003). The Seventh Circuit has interpreted the effects doctrine broadly to permit the state in which the victim of a tort suffers injury to entertain the suit, even if all other relevant conduct occurred outside the state. *Id.*; *see Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202-03 (7th Cir. 1997) ("the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders"). "Under the effects doctrine, courts have exercised personal jurisdiction over a defendant who commits a tort against an Illinois business when the injury is felt in Illinois." *See Int'l Molding Machine Co. v. St. Louis Conveyor Co.*, No. 01 C 8305, 2002 WL 1838130, *4 (N.D. Ill. Aug. 12, 2002) (exercising personal jurisdiction over non-resident defendant charged with trade secret misappropriation) (citations omitted).

The court finds defendants have sufficient minimum contacts with Illinois to satisfy personal jurisdiction requirements. Spank alleges defendants misappropriated Spank's trade secrets and that the resulting injury is felt in Illinois. Indeed, defendants were aware Spank's principal place of business is in Illinois and the injury from trade secret misappropriation would be felt most severely in Illinois. *See Ridell*, 2003 WL 21799935 at *3. Under these circumstances, it was foreseeable that defendants would be required to answer for their actions in Illinois. *Id.*; *see also Int'l Molding*, 2002 WL 1838130 at *4-5.

Further, exercising personal jurisdiction over the defendants will not offend traditional notions of fair play and substantial justice. The most important factors relevant to this inquiry are the interests of the states involved and the relative convenience of litigating in each state. *See Ridell*, 2003 WL 21799935 at *4. Illinois has an interest in adjudicating the case because Spank is an

5

Illinois company and defendants' alleged tortious activity caused injury in Illinois. *See Int'l Molding*, 2002 WL 1838130 at *5. Nor is it unduly burdensome for defendants to litigate in Illinois. While it would be more convenient for Jones and Braverman to defend in California, travel to Illinois is not so oppressive as to offend traditional notions of justice. *Id., citing Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 2d 824, 840 (N.D. Ill. 2000) (modern advances in transportation and communication make it more reasonable to litigate in a foreign forum).

### B. Service of Process

Braverman asserts she was not properly served with process pursuant to California law. The California Code of Civil Procedure allows substituted service on individuals after reasonable diligence has been made to serve them personally. Cal. C.C.P. § 415.20(b). If a copy of the summons and complaint cannot be personally delivered to the person to be served with reasonable diligence, service may be effected by leaving a copy of the summons and complaint at the person's usual place of business with a person apparently in charge of the business. *Id.* Braverman acknowledges that the process server's affidavit evidences reasonable diligence in attempting to effect personal service upon her. Reply at 14; Resp. Ex. A (fourteen attempts). Nevertheless, she argues service upon her was improper because Sovereign is not her usual place of business. Mot. Ex. B.

The parties have not cited any authority regarding what constitutes a "usual place of business" under California law, nor has the court uncovered any helpful guidance. Nevertheless, Braverman attests she works out of Sovereign's office a few days per week, that she was listed as the person to contact for sales information on Sovereign's press releases, and that she received payment from Sovereign for work she completed in organizing and setting up the company. *Id.* The

court finds the service of process sufficiently satisfies California law based on Braverman's admitted activities at Sovereign.

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction or improper service must be denied.

### III. Venue

Defendants seek transfer of venue pursuant to 28 U.S.C. §§ 1406(a) and 1404(a).[1] In resolving a motion to dismiss for improper venue, Spank bears the burden of establishing that venue is proper. *ABN Amro Sage Corp. v. Cohen*, No. 03 C 3556, 2003 U.S. Dist. LEXIS 15390, *13 (N.D. Ill. Sept. 3, 2003). Any factual conflicts must be resolved in Spank's favor. *Id.* In a diversity action, venue is governed by 28 U.S.C. § 1391 (a), which provides an action may only be brought in: (1) a judicial district where any defendant resides, if all defendants reside in the same district; (2) a judicial district in which a substantial part of the events giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Spank contends venue is proper under § 1391(a)(2) because a substantial part of the property at issue is situated in this district. Resp. at 6; Compl. at ¶ 3. Spank asserts the property allegedly misappropriated (copies of music and sound design spots, tracks and videotapes, bidding and invoicing software, client database, agency information and job folders) can be duplicated and stored

---

[1] Defendants' motion to file an amended motion to dismiss *instanter* and *nunc pro tunc* is granted. The amended motion is identical in substance to the original motion, and merely clarifies transfer is sought pursuant to 28 U.S.C. §§ 1406(a) and 1404(a). Spank addressed both grounds in its response to the original motion after noting defendants' basis to transfer was unclear. Resp. at 6-7.

in more than one location and "it is fair to say that it was 'situated' in both California and Illinois." Resp. at 6. Spank concludes venue is proper in both Illinois and California. *Id.* at 6-7.

Jones and Braverman argue venue in this district is improper because they reside in California and all events giving rise to the claims occurred in California. By focusing on the lack of events in this venue giving rise to the complaint, defendants ignore § 1391(a)(2)'s basis for venue based on the location of property. Although the dearth of events giving rise to venue is persuasive in considering defendants' motion to transfer, it does not bar venue when Spank asserts a substantial amount of property is located here. Accordingly, venue is proper in this district.

A court may transfer venue, however, to any district or division where the case may have been brought for the convenience of parties and witnesses. 28 U.S.C. § 1404(a). "The task of weighing factors for and against transfer 'involves a large degree of subtlety and latitude' and it is a decision within the discretion of the trial judge." *Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co.*, No. 99 C 3939, 2000 WL 263973, *7 (N.D. Ill. Mar. 6, 2000) (citations omitted). Under § 1404(a), "the movant . . . has the burden of establishing that the suit should be transferred" and must prove "that the balance of interests weighs strongly in favor of proceeding in the proposed transferee district." *Media Communs., Inc. v. Multimedia Sign Up, Inc.*, No. 99 C 5009, 1999 U.S. Dist. LEXIS 19460, at *10 (N.D. Ill. Dec. 13, 1999) (citations omitted). To prevail on a motion to transfer under § 1404(a), a party must demonstrate: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice. *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001), *quoting TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 793 (N.D. Ill. 1998). Venue is appropriate here. The parties do not dispute that

venue is appropriate in the Central District of California. Therefore, the court considers the convenience of the parties and witnesses and the interests of justice.

### A. Convenience of the Parties

In determining the convenience of the parties and witnesses, the court considers: (1) Spank's choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the witnesses and parties of litigating in the respective forums. *Confederation Des Brasseries de Belgique v. Coors Brewing Co.*, No. 99 C 7526, 2000 WL 88847, *3 (N.D. Ill. Jan. 20, 2000). Venue should be transferred only if there is a clear balance of inconvenience in the transferor district over the transferee district. *Tsaparikos v. Ford Motor Co.*, No. 02 C 6899, 2002 WL 31844949, *1 (N.D. Ill. Dec. 18, 2002). "Venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff." *Id.*

A plaintiff's choice of forum is generally given substantial weight under § 1404(a), particularly when it is plaintiff's home forum. *See Pepsico, Inc.*, 2000 WL 263973 at *8. Plaintiff's choice of forum is given less weight where another forum bears a stronger relationship to the dispute. *Id.*; *see also Countryman v. Stein, Roe & Farnham*, 681 F. Supp. 479, 483 (N.D. Ill. 1987) (plaintiff's choice of forum given less weight if the cause of action "did not conclusively arise in the chosen forum"). Here, the Central District of California bears a stronger relationship to the dispute. The Northern District of Illinois is not the site of material events for the misappropriation, breach of confidentiality and breach of fiduciary duty claims. None of the alleged events giving rise to the complaint occurred in Chicago, or even Illinois. The acts alleged, such as solicitation, breach, misappropriation and destruction of Spank's Los Angeles operations, all involve conduct that

occurred in California, by California residents. Spank's choice of forum is thus given less weight and the site of material events weighs in favor of transfer.

The relative ease of access to sources of proof also favors transfer. Spank asserts the property allegedly misappropriated can be duplicated and stored in more than one location and "it is fair to say that it was 'situated' in both California and Illinois." Resp. at 6. Further, the copying and shipping of documents does not typically impose a significant burden. All documents necessary to present both sides of the case can easily be transported to either venue. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). Because the alleged events involve Spank's Los Angeles office, conspiratorial meetings and actions in the Los Angeles office, the creation and development of a competitive California business, and actions evidencing breach of confidentiality and fiduciary duty that occurred in California, the majority of relevant evidence is located outside Illinois.

The court must also consider witness convenience in determining whether transfer is appropriate. The court looks to the nature and quality of the witnesses' testimony, not just the number of witnesses in each venue. *Confederation Des Brasseries de Belgique*, 2000 WL 88847 at *4. Spank intends to seek testimony from its owners and business manager, who currently reside in Illinois. Spank's current employees are irrelevant to the convenience analysis. *See Avesta Sheffield v. Olympic Continental Resources, L.L.C.*, No. 99 C 7647, 2000 WL 198462, at *6 (N.D. Ill. Feb. 14, 2000) ("It is presumed that a party's employees will appear as witnesses voluntarily"). The only other witnesses Spank will call include the defendants, all of whom reside in California, and some nationally-based clients who will likely be non-Illinois residents. Resp. at 7. In fact, Spank's Rule 26(a)(1) disclosures identify 15 witnesses who have relevant knowledge and are likely to be called as witnesses. Reply Ex. B. Of those witnesses, 12 reside in California. Defendants'

Rule 26(a)(1) disclosures list 14 witnesses, 10 of whom live in California. Reply Exs. A, C. A review of the parties' disclosures shows the nature and quality of the California witnesses' testimony is critical to the legal issues. Therefore, witness convenience clearly favors transfer to the Central District of California.

The court also considers the convenience of the parties in its § 1404(a) determination. Specifically, the court considers the parties' respective residences and their ability to bear the costs of litigating in a particular forum. *Avesta Sheffield v. Olympic Continental Resources, L.L.C.*, No. 99 C 7647, 2000 WL 198462 at *7 (N.D. Ill. Feb. 14, 2000). Although Jones and Braverman are the only defendants to bring this motion, it is undisputed that all four defendants reside in California. Defendants submit evidence that Spank generates at least $1.5 million in annual revenues, and maintains property interests in California. Reply at Ex. C; *see also* Compl. at ¶¶ 44-52. In contrast, defendants indicate defending the case in Illinois would be burdensome for Jones and Braverman, individuals with limited resources. Consideration of the convenience of the parties also clearly favors transfer to the Central District of California.

### B. Interests of Justice

Finally, the court must consider whether transfer is in the interests of justice. This analysis focuses on efficient functioning of the courts, rather than the private interests of the litigants. *TIG Ins. Co. v. Brightly Galvanized Products, Inc.*, 911 F. Supp. 344, 346 (N.D. Ill. 1996). Among the factors the court considers are the speed at which the case will proceed to trial and the public interest in having a case resolved in a particular forum. *See Celozzi v. Boot*, No. 00 C 3285, 2000 WL 1141568, *8 (N.D. Ill. Aug. 11, 2000). These factors slightly favor defendants. Defendants submit evidence that the median time from filing to trial in the Northern District of Illinois is 26 months,

while the median time in the Central District of California is 21.2 months. Reply Ex. E. Further, while Illinois has an interest in entertaining causes of action where injury is felt in Illinois, the fact that Spank seeks injunctive relief against California residents and a California company increases California's interest in resolving the case. *See Celozzi*, 2000 WL 1141568 at *8.

Defendants have clearly shown that California is a more convenient venue in which to bring this litigation. The court concludes, in its discretion, that transfer under § 1404(a) to the Central District of California is warranted.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction and improper service is denied. Their motion to transfer venue is granted.

February 7, 2005                                ENTER:

                                                Suzanne B. Conlon
                                                United States District Judge